UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 4:21-CR-00223-HEA |
| | ) | |
| **COLLIS LEE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## GUILTY-PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1.     PARTIES:**

The parties are the defendant Collis Lee, represented by defense counsel Joel J. Schwartz, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri.  This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri.  The Court is neither a party to nor bound by this agreement.

**2.     GUILTY PLEA:**

    **A.     The Plea:**     Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, in exchange for Defendant's voluntary plea of guilty to Counts One and Two of the Indictment, the United States agrees to move for the dismissal as to Defendant of Count Three at the time of sentencing.  Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to Defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the Indictment.

**B.     The Sentence:**     The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. **Further, based upon the unique circumstances of this case, the parties jointly recommend a sentence between 120 months and the low end of the Defendant's guideline range of imprisonment. Each party may recommend to the Court a specific sentence within that range.**

3.     **ELEMENTS:**

   A.     **Count One:**     As to Count One, Defendant admits to knowingly violating Title 18, United States Code, Section 1951, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

   **(i)**     Defendant knowingly robbed a commercial establishment engaged in interstate or foreign commerce;

   **(ii)**     The robbery involved cash;

   **(iii)**     The cash was in the custody of employees of the commercial establishment; and

   **(iv)**     Defendant's actions obstructed, delayed, and affected commerce in some way or degree.

"Robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against the person's will.  The unlawful taking or obtaining must occur by means of actual or threatened force, or violence, or fear of injury, whether immediately or in the future, to the person's body or property in the person's possession.

   B.     **Count Two:**     As to Count Two, Defendant admits to knowingly violating Title 18, United States Code, Section 924(c), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

    **(i)**    Defendant committed the crime of Interfering with Commerce by Robbery, as set forth in Count One of the Indictment; and

    **(ii)**    Defendant knowingly possessed and brandished a firearm in furtherance of that crime.

**4.**    **<u>FACTS</u>:**

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On December 5, 2020, Defendant Collis Lee and Co-Defendant Diven Steed robbed the O'Reilly Auto Parts store in Jennings, Missouri, within the Eastern District of Missouri.

On that day, Lee and Steed arrived at the O'Reilly Auto Parts store on Jennings Station Road and loitered outside in their car. After a few minutes, they entered the store and announced a robbery by brandishing firearms and stating, "You know what time it is." Steed held in his hands a handgun that appeared to be a rifle and Lee held a handgun. With the robbers' attention on the two employees, an O'Reilly's customer fled the store, went to an adjacent store, and asked employees there to call 911.

Meanwhile, Steed and Lee proceeded to force the clerks to open as many cash registers as they could. Lee then pistol-whipped the clerk in the face. In order to distract Lee and Steed from the injured clerk, the other clerk advised them he had personal money in the break room. The clerk gave them approximately $60-$100 cash before Steed and Lee made him rejoin the injured clerk. Steed and Lee demanded access to the safe, but the clerks said it was on a timer and could not be opened. Lee then pistol-whipped the injured clerk a second time. During the robbery, Steed made multiple references to killing the two clerks. The clerks were in fact fearful

they would be killed. The witnesses noted that Lee was keeping track of the amount of time he and Steed were in the store. Shortly after the robbery began, one of the robbers started shouting "1:30" and the robbers left the store, returned to their vehicle, and immediately fled the scene.

While this was going on, police were responding to the 911 call. Because the St. Louis County SWAT team happened to be on patrol in the area, a large number of police vehicles were nearby and four police vehicles were in the O'Reilly's parking lot before Steed and Lee even left the store. As Steed and Lee entered Steed's sedan in an attempt to flee, witnesses began pointing officers to the suspects. With Lee driving and Steed in the front passenger seat, Steed's sedan fled the parking lot while being pursued by police.

At the first intersection at which they arrived, Lee lost control of the sedan while attempting to make a right hand turn at high speeds. The car drove over the median and t-boned the second car of a three-car funeral convoy. The car into which he crashed was a funeral limousine transporting grieving family members to a funeral home for a funeral service scheduled that morning. Five of the individuals in that limousine were injured in the accident. The accident disabled Steed's sedan.

Steed immediately got out of the car, still carrying the gun he brandished during the robbery. As he fled on foot, he transferred the firearm from one hand to the other, and repeatedly looked back at officers chasing him. Steed ran for a residential neighborhood. While he ran, police ordered Steed to drop his firearm, but he ignored police commands. Because Steed (1) continued to brandish the firearm, (2) was looking over his shoulder at officers as he ran, (3) was fleeing from a violent crime, and (4) was running directly toward occupied residences where he could either be a threat to residents by entering the residences, or could be a threat to officers by running around a blind corner of a residence and then opening fire at pursuing officers, a police

officer shot twice, striking Steed in the buttocks. Upon exiting, the bullet grazed Steed's scrotum. As a result, Steed fell to the ground and surrendered himself. At the time he was shot, he was on the front lawn of the residence nearest him. This shooting was captured on body cameras of the officers, which corroborates this account of the shooting. The officer's use of force against Steed was a reasonable use of force. Officers began administering medical treatment to Steed immediately after he fell and police disarmed him.

Lee also fled Steed's sedan and ran towards the residential neighborhood, but ran towards a different set of houses in that neighborhood than Steed. Lee tripped and fell, which allowed police to arrest him. As he fell, police heard a firearm falling, leading them to believe he dropped a firearm. Lee repeatedly denying having firearms on him. During a pat down, police found two firearms between his inner sweatpants and outer sweatpants. The firearms had both fallen to his ankles within his pants and officers had heard the metal of the firearms hitting each other when Lee fell to the ground. Police also found large amounts of cash and coins in the space between his two pairs of pants. Once handcuffed and searched, Lee tried to flee on foot, but tripped and fell again. He was then put into a police car and buckled in. Because the police vehicle did not have a transportation cage, Lee was placed in the front passenger seat. Even though a police officer was right outside the vehicle, he unbuckled his seatbelt in preparation to flee once more, but could not leave the car as police were leaning on the door. After about 10 minutes, police realized he had unbuckled himself and re-buckled him. On the drive to the police station, Lee unbuckled himself again and tried to exit the moving vehicle, but was grabbed and restrained by the officer driving the vehicle and the officer seated behind Lee. When he was removed from the police car at the station, he again tried to run while handcuffed, but again fell to the ground.

An accounting of the O'Reilly registers found $505.18 missing. The store clerk also reported a $100 loss from the personal money he gave to the robbers. Steed's clothing (which was quickly removed on the scene so officers could treat his wounds) was found to have $165.90 stuffed into the pockets. Lee was found to have $367.25 in his possession.

O'Reilly's Auto Parts operates in interstate commerce, selling products manufactured outside Missouri. O'Reilly Auto Parts is a nationwide automotive parts supply chain, and sells products for a wide array of vehicles, almost all of which are manufactured outside Missouri. The store was closed temporarily following the robbery to allow for the investigation to proceed.

The two handguns on Lee were determined to be a Taurus make, G2c model, 9mm Luger caliber semiautomatic firearm and a Smith & Wesson make, SD40 VE model, .40 S&W caliber semiautomatic firearm. The Smith & Wesson firearm had a magnet placed within it that physically obstructed the slide from operating, rendering it incapable of firing without removal of the magnet. Once the magnet was removed, the Smith & Wesson fired normally. The Smith and Wesson was loaded with an empty chamber and nine rounds in the magazine. The Smith & Wesson firearm had been reported stolen. The Taurus firearm operated normally. The Taurus was loaded with one round chambered and twelve rounds in its magazine.

Steed's firearm, which witnesses described as a rifle, was a Pioneer Arms make Hellpup semiautomatic pistol, which is an AK-47 style firearm. It was loaded with one round chambered and 22 rounds in its magazine.

All three handguns were determined by an expert firearms examiner to have been manufactured outside the State of Missouri, and, therefore, each handgun had been transported across state lines and in interstate commerce prior to or during Lee's and Steed's possession. Each handgun can expel a projectile by the action of an explosive and is, therefore, a "firearm" as

defined under federal law. Lee admits knowingly directly possessing the Smith & Wesson and Taurus firearms and knowingly indirectly possessing the Pioneer Arms firearm in furtherance of a crime of violence, specifically the robbery of the O'Reilly's Auto Parts. Lee admits to pistol-whipping the clerk with one of the two firearms in his direct possession.

Prior to December 5, 2020, Defendant was convicted of at least one felony crime punishable by imprisonment for a term exceeding one year. At the time Defendant possessed the aforementioned firearm, he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

**5.      STATUTORY PENALTIES:**

A.      **Statutory Penalties**: Defendant fully understands that the maximum possible penalties provided by law for the crimes to which Defendant is pleading guilty are:

(i)      **Count One**: Defendant fully understands that the maximum possible penalty provided by law for the crime to which Defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not more than 3 years.

(ii)      **Count Two**: imprisonment of not less than seven years, but not more than life, consecutive to any other sentence imposed; a fine of not more than $250,000; or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than five years. **Defendant fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of seven years consecutive to any other sentence imposed.**

**6.      U.S. SENTENCING GUIDELINES: 2018 MANUAL**

Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply:

**A.      Offense Conduct**:

**COUNT ONE**
**HOBBS ACT ROBBERY**

**(i)     Chapter 2 Offense Conduct**:

**(a)     Base Offense Level**: The parties agree that the Base Offense Level is 20, as found in Section 2B3.1(a).

**(b)     Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply:

- A three-level increase pursuant to Section 2B3.1(b)(3)(D) because victim suffered a degree of bodily injury between "bodily injury" and "serious bodily injury";

**(ii)    Chapter 3 and 4 Adjustments**:

**(a)     Obstruction-Related Adjustments:** The parties agree that two levels should be added because Defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, pursuant to Section 3C1.2. The parties have negotiated for the government to not move for an upward departure on the basis of Section 3C1.2, Comment 5, which allows an upward departure if the reckless conduct resulted in bodily injury, or more than one person was put at risk as a result of the reckless conduct.

    **(b)**  **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and if Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

  The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**COUNT TWO**
**POSSESSION OF FIREARM IN FURTHERANCE OF A CRIME OF VIOLENCE**

    **(i)**  **Chapter 2 Offense Conduct**:

      **(a)**  **Base Offense Level**: The parties agree that the Base Offense Level is found in Section 2K2.4(b) and (c).

    **(b)** **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply: none known at this time.

   **(ii)** **Chapter 3 and 4 Adjustments**: If Defendant is not a Career Offender, pursuant to Section 2K2.4(b) and Application Note 5, Chapters Three and Four do not apply and, as to Count Two, Defendant will not be entitled to an acceptance of responsibility reduction under Section 3E1.1. If Defendant is a Career Offender, pursuant to Section 2K2.4(c), Sections 3E1.1, 4B1.1, and 4B1.2 would apply and Defendant will be eligible for an adjustment for acceptance of responsibility as stated in Count One, above.

  **B.** **Estimated Total Offense Level:** Based on these recommendations, the parties estimate that the Total Offense Levels are as follows:

   **(i)** **Count One**: The parties agree that the Total Offense Level for Count One is 22, unless defendant is a Career Offender. Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that Defendant is or is not a Career Offender.

   **(ii)** **Count Two:** The parties agree that with respect to Count Two, Defendant's sentencing guidelines will be 84 months, unless defendant is a Career Offender. Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds defendant is a Career Offender, the Total Offense Level will be determined by Section 4B1.1 and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel.

Both parties reserve the right to argue that Defendant is or is not a Career Offender.

      C.    **Criminal History:**   The determination of Defendant's Criminal History Category shall be left to the Court.   Either party may challenge, before and at sentencing, the finding of the Presentence Report as to Defendant's criminal history and the applicable category.   Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

      D.    **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.   The parties may not have foreseen all applicable Guidelines.   The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.   The Government recognizes it is bound by the specific agreements made herein, but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7.**    **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

      A.    **Appeal:**   Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

      i.    **Non-Sentencing Issues:**   The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

      ii.    **Sentencing Issues:**   In the event the Court accepts the plea and sentences Defendant consistent at or below the low end of Defendant's sentencing guideline range, then, as part of this agreement, Defendant hereby waives all rights to appeal all sentencing issues other

than Criminal History. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences Defendant to 120 months or more.

      **B.**    **Habeas Corpus:**  Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

      **C.**    **Right to Records:**  Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.**    **OTHER:**

      **A.**    **Disclosures Required by the United States Probation Office:**  Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

      **B.**    **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against Defendant.

      **C.**    **Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on Defendant to which

Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

   **D.**  **Mandatory Special Assessment:**  This offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which Defendant agrees to pay at the time of sentencing. Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

   **E.**  **Possibility of Detention:**  Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

   **F.**  **Fines and Costs of Incarceration and Supervision:**  The Court may impose a fine, costs of incarceration, and costs of supervision. Defendant agrees that any fine imposed by the Court will be due and payable immediately.

   **G.**  **Forfeiture:**  Defendant agrees to forfeit all of Defendant's interest in all items seized by law-enforcement officials during the course of their investigation. Defendant admits that all United States currency, weapons, property, and assets seized by law enforcement officials during their investigation constitute the proceeds of Defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity. Defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the United States and to rebut the claims of nominees and/or alleged third party owners. Defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

**9.     ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS:**

In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the United States to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.  Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel.  Defense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the United States' case and any defenses.

**10.**     **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case.  In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea.  Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

**11.**     **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement.  The United States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the United States agrees to dismiss or not to bring.

12/8/2021
Date

Jason S. Dunkel
Assistant United States Attorney

12/6/21
Date

x C Lee
Collis Lee
Defendant

12/6/21
Date

Joel J. Schwartz
Attorney for Defendant